United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the second day of our oral argument panel. We were all supposed to be in for this session but obviously things have had to be altered given the way the virus has affected all of us. So Judge Pryor, Judge Branch and I are very happy that you are with us today and here to help us figure out these cases. We have no lighting system of course given our telephone arguments but Ms. Tisa will give you a two-minute warning when you have a couple of minutes left in your argument so that you'll know when it's time to begin winding down or wrapping up. And with that we'll begin with our first case which is number 19-12717 United States v. Oral Roger Russell. Mr. Adler. May it please the court, Andrew on behalf of Oral Russell. In light of this court's decision in Jones it's now clear that the district court erred by declaring Russell ineligible for section 404 relief. The court made that error in both its initial order and in its order denying reconsideration. But in the first order the court added one sentence that it would deny relief even if Russell was eligible. That alternative discretionary denial is the only way to affirm here. But in addition to being wholly conclusory that ruling cannot be upheld for two independent reasons. First as a procedural matter because the court sui sponte recharacterized Russell's motion for counsel as a section 404 motion the discretionary denial was made without hearing any arguments in favor of a discretionary reduction. And Russell has compelling arguments to make in light of his BOP record and what his guideline range would be today if he were sentenced today. Second the discretionary denial was based on the erroneous legal assumption that Russell's statutory range would remain under B1A instead of under B1B. The question there is how do we determine what the statutory range would be under the Fair Sentencing Act? Section C of the Jones decision answered that question. The court must use the drug quantity that the statutory range was based on at the original sentencing. Here that was the 50 gram quantity admitted in the paragraph 1 of the plea agreement which would now trigger the statutory range in B1B not B1A. The 441 gram quantity in the factual proffer was admitted only for purposes of the guideline range so it cannot be used to determine the statutory range now. That straightforward methodology is easy to apply and it's exactly what this court applied in Jones for all four of the movements there. And movement Allen is particularly instructive because like Russell there were two drug quantity findings in his case. There was a 50 gram quantity found by the jury and there was a more than 280 gram quantity found by a judge and what this court did is it looked to it used the former because that is what the statutory range had been based on in his case. It did not use the higher quantity because that did not actually trigger his statutory range and the same rule should apply in this case. I think the government is... Does that go for all of his convictions? I'm sorry for which person? For the person you were describing in Jones. Movement Allen? Yes. I believe there's only one conviction in that case that was relevant. I believe there was a conspiracy count in his case and that was the covered offense. Okay. It was really only one conviction there that was at issue. But I think it's also instructive to look at the other movements in that case. There were two movements, Jones and Jackson, who were pre-apprendi defendants and what this court did in Jones is it said well you guys were pre-apprendi so there was an uncharged quantity that was found by a judge and that's what triggered the statutory range at your sentencing and you're stuck with that. So Mr. Jones was trying to say well you can't use that quantity in light of apprendi. We now know it's unconstitutional and this court said no you're not allowed to re-litigate that and that is exactly why Mr. Jones lost his case and we see that in the first paragraph of section C of the decision. But what's interesting here is the government I think that's trying to re-litigate the drug quantity issue here in this post-apprendi case. It's trying to repurpose the 441 gram quantity. That was originally used only to calculate the guideline range, not the statutory range. And just like Mr. Jones was not allowed to re-litigate the drug quantity issue in the Jones case, we don't think the government should be allowed to re-litigate the drug quantity issue here. And we think it would also be... Mr. Adler, this is Jill Pryor. Let me take a step back. I understand that you and the government have a disagreement about which drug quantity we should consider. But given the government's concession that Mr. Russell is eligible for relief, even if we look to the drug quantity identified in the plea agreement, do we really need to decide that issue? No, Your Honor. I think that's exactly right. The narrowest way to decide this I think would just be to say that this discretionary denial in the initial order is procedurally flawed because it was made without giving Mr. Russell any opportunity to make his arguments. And so even if the statutory range remains unchanged, as the government says, he's still eligible for relief and the discretionary denial is still procedurally erroneous. So I think it would be nice for this court to give guidance on how to determine the statutory range in plea cases like this one, but I don't think the court needs to decide that to resolve this appeal and send it back and the parties can dispute that issue on remand in the district court. So I think you're right, Your Honor. I think it would be nice for the court to clarify this issue because I think the government – I think there's been some disagreement and some unpublished opinions as well about how to do this. But we think that Joan's opinion speaks pretty clearly to this. And again, it's really the first two paragraphs of Section C of the decision that we think answer this question. But if I could, I think the other reason why remand here is so crucial is because Mr. Russell really does have strong arguments that he would like to make in the BOP file that he attached to his reconsideration motion. It's really an impressive rehabilitation that he has shown. He has zero disciplinary incidents in over 14 years. He serves as a mental health companion in the skills program at Coleman, which helps people with special needs. He's got over 1,000 hours of GED course credits. He's got glowing reviews by the staff and counselors at BOP. And another argument as well is that if he were sentenced today, he would no longer be a career offender because without the residual clause in the guidelines, his prior conviction for fleeing and eluding would no longer be a crime of violence. And without the career offender enhancement, his base offense level would actually be 32 after the drug minus two amendment. Minus three for acceptance would be 29 with the criminal history category of six. That's a guideline range of 151 to 188, which is about a decade lower than his guideline range of 262 to 327. So these are some of the arguments that I think he would just like the opportunity to make with counsel before a judge who, in light of Jones, now would understand that he is in fact eligible for relief and that the court has authority to issue relief. I think just turning briefly to the reconsideration denial, I think there may be a dispute about whether that was based on eligibility or discretion. We think at the very least it's unclear and therefore has to be vacated after Jones. This court has been very clear and consistent that where there's any doubt about the basis of the denial, it has to be remanded. And we've cited a dozen post-Jones opinions where this court has done that, including two of them, Brewer and Leroy Jackson, where there was far less ambiguity than there is here. There was express discretionary denials in those cases that were alternative discretionary denials. And here, we don't have an express discretionary denial in the reconsideration order, even though we got one in the first order. So this judge knows how to make a discretionary denial when he wants to. And the arguments that the judge was making in the reconsideration denial are basically exactly the eligibility arguments that the government had been making in these section 404 cases and that this court did not accept in the Jones case. Counsel, let me ask you one question. I know we've talked about how you and the government disagree as to the potential range of reduction. What effect does it have that in his factual proffer, your client admitted that the total amount of the crack cocaine involved was 441.2 grams? Right. So we don't think that amount should be used. Two minutes, counsel. Counsel, please. Two minutes. Thank you. Right. So our point is that that amount cannot be used to calculate what the statutory range would be under the Fair Sentencing Act because that amount was admitted in paragraph two of the plea agreement only for the purposes of determining the guideline range, not the statutory range. We agree that the 441 grams can be considered by the district court when he's exercising his discretion, whether to grant a discretionary reduction, but for purposes of calculating the statutory range under the Fair Sentencing Act, we don't think the government should be allowed to repurpose that drug quantity. Especially because had the Fair Sentencing Act been in effect in 2008 when he was being sentenced, well, the court could not have constitutionally sentenced him under B1A because at that time, 50 grams or more, that was the charge in the indictment. That would be a B1B offense. So it would basically violate the Fifth Amendment's grand jury right to sentence him for an offense that he was never charged with. Your position then, Mr. Adler, is that under Jones, you look to the charged offense for eligibility purposes as to whether it's a covered offense, right? Well, yes. I think Jones makes that clear, and I don't think there's any dispute that there's a covered offense here. I think our point is just the next step of determining what the statutory range would be under the Fair Sentencing Act, you look to the drug quantity that actually triggered the statutory range at the sentencing. For pre-apprendee defendants like Jones and Jackson, that's not necessarily going to be the charged amount. There was no amount that was being charged in pre-apprendee cases for the most part, so in those cases, it's usually going to be the uncharged quantity that was found by a judge. But in post-apprendee cases like this one, it's going to be the charged amount because that is what was triggering the statutory range in those post-apprendee cases. All right, Mr. Adler. Thank you very much. We'll give you your full time for rebuttal. Thank you. Ms. Hirsch? Good morning. This is Lisa Hirsch. I'm here representing the appellee in this case, the United States. The United States requested this court affirm the district court's order, even though we have conceded in our subsequent letters to the court that the court erred in its initial finding of eligibility that the court nonetheless affirm it based on the court's discretionary ruling because we know what the district court would do with its discretion, and it very clearly told us that it would deny Mr. Russell a sentence reduction. Ms. Hirsch, on that point, can I ask you a question, please? Sure. When the district court said that it would deny relief based on the exercise of its discretion, Mr. Russell had not yet been able to present any arguments in favor of a favorable exercise of discretion because he had just requested counsel, and the district court re-characterized his motion for counsel as a motion for a reduction of sentence. Why shouldn't we just send it back, let the district court give Mr. Russell a chance to make his arguments given that he has a covered offense, and if the district court is going to exercise its discretion and deny relief, then we'll know that for sure on a complete record? My reading of the two orders, not only the first order, which expressly said that even if Russell was eligible, the court would deny relief, that the court then amplified its arguments responding to the arguments that were made in the motion for reconsideration, such as the amount of cocaine that should be considered. The court implicitly looked at the post-sentencing conduct by letting the defendant know that what the court felt was the important factor was to avoid unwarranted sentencing disparities and like defendants. My reading of the orders together is that the court was considering the defendant's arguments and basically let the defendant know that there was no change in its view of the case or the way it would exercise its discretion. Thank you. Ms. Hirsch, let me break that down. My understanding from what you said is that you're relying on both orders together, but I do want to look at them separately for a moment. So, with respect to the first order where the district court judge said expressly he was exercising his discretion, would you agree with me that Mr. Russell had not yet put any arguments before the court? He just asked for counsel. Correct. Yes, Your Honor. It looks like the parties never ordered the transcript and it's not in the record. Is that correct from the original sentencing hearing? That is correct, Your Honor. Okay. So, what arguments or evidence were before the court when it said it was exercising its discretion? The government's response and the court's knowledge of the record in general. Okay, but the court didn't say that, so we don't know, right? Well, the court says that it had reviewed the pertinent portions of the record, so that would be the indictment, the plea agreement, and the government's response, but it didn't specify. That's correct, Your Honor. That's right, and nothing from Mr. Russell, as Judge Jordan pointed out. Correct. With respect to the second order, denying the motion for reconsideration, the district court gave some reasons for denying the motion, but I couldn't tell from that whether the district court was explaining why Mr. Russell was ineligible for release and the court lacked authority, which of course would be incorrect as a matter of law, or whether the court was choosing not to exercise its discretion. Do you see anything in the order that would clarify that for me? The order seems to track the defendant's argument relating to quantity, because in the motion for reconsideration, Russell made the very specific argument, which is being made here today, that you look at the quantity listed in the indictment to then set the statutory penalties, rather than the amount in the plea agreement. And so, raised the apprendee and the lead cases, and so it looked like the court was addressing that specific argument in its order. And then explaining why it wouldn't give him a sentence reduction. Counsel, to the order denying the motion for reconsideration, you would concede, though, that the court does not provide a clear statement that it would exercise its discretion to deny the defendant a reduction in sentence like the court had done in the original order, correct? It does not expressly say that in the order for denying reconsideration. So I guess we, just to go back, to circle back to a point that was made earlier, why wouldn't we just, because there is so much unclear about this, why wouldn't we just send this back to the district court? Well, as I said earlier, I just feel that the two orders are to be taken together, and this is why the court explained that it would not exercise its discretion in the last sentence to avoid unwarranted disparities between the parties, the similarly situated defendants. Ms. Hirsch, do you agree? I asked Mr. Adler the question about whether we needed to resolve the disagreement about the use of the 441 grams in the plea agreement. Do you agree that we don't really need to decide that issue? We can just remand and send it back to the district court? I do agree with that, although the court may have to wrestle with that in deciding, you know, the scope of its discretion. But I don't think at this moment, I don't think the court has to resolve that. Counsel, in looking at one of our admittedly unpublished opinions, but in the USC Brewer case from this year, we said where the record is ambiguous about whether the district court understood its authority to reduce the sentence under the First Step Act, we will vacate the order and remand for further proceedings. So is it your position that the record is not ambiguous? Is that how you distinguish Brewer? Yes, that's correct, Your Honor. I think when you take the two orders together, that the court was clear that it would exercise its discretion and it gave reasons why basically in the second order. So correct, I would say it's not ambiguous and that we know what the court would do if it were remanded. Okay, anything else, Ms. Hirsch? Just that I think this case is like the Lanier case, which was a recently decided unpublished opinion where the court looked at the quantity that was admitted in the plea agreement and that Russell here admitted that this larger amount of cocaine base was his relevant offense conduct and so the court is thus bound by that. And that the record shows that the court was looking at that and the correct statutory maximum and explained its reasons for not granting a sentence reduction in this case. So if there's nothing further, I would ask that the court affirm the district court's order. All right, thank you very much, Ms. Hirsch. Thank you. Mr. Adler? Yes, thank you, Your Honor. Just a couple of points about this reconsideration order. I think it has to be read in context and our reading is that it's an eligibility denial. That what the court is saying here is that anybody, not just Russell, but anybody that's a B1A case that has more than 280 grams is not eligible. It's saying in the last sentence, Congress did not intend to afford these people the benefit of the law. That's a categorical exclusion of people. And these are exactly the same eligibility arguments that the government had been making in all of the pre-Jones cases. Again, nowhere in this order do we see an expressed discretionary denial, even though the judge knew how to make one from the first order. We don't see any mention of any facts particular to Mr. Russell about his case other than the drug quantity. Mr. Russell's arguments in his reconsideration motion for discretionary reduction had nothing to do with drug quantity. They were about his rehabilitation, and that is why he attached his lengthy BOP record to the motion, and we see no mention of that in this order whatsoever. And I think it's also worth pointing out that the government's response in this case was a four-page response that was solely an eligibility argument. There were no arguments about why discretionary reduction would not be appropriate. And in addition, the court had also ordered the probation officer to respond, and they submitted an ex parte memorandum, which was also an eligibility argument that he was not eligible. There were no arguments about discretion in that memorandum either. So to Judge Pryor's earlier point, there's just nothing in this record that would suggest that – I'm not sure what this initial discretionary denial was even based on. And I'm not even sure how this court could possibly review it. But as to the reconsideration denial, we think it's best read as an eligibility ruling. And at the very least, it's ambiguous, and this court's decision in Jones makes that very clear with respect to – that's why this court remanded for defendants Allen and Johnson in the Jones case, because the basis of the orders were ambiguous. And in the 28-J we filed last week, this court – we cited a dozen post-Jones cases remanding where there was ambiguity, including the Brewer case that was mentioned by Judge Branch. And I think that's a really telling case because in that case, there was an erroneous eligibility denial, and there was also an express alternative discretionary denial. And this court still said, well, it's ambiguous because maybe that discretionary denial was influenced by the erroneous eligibility denial. Let's just send it back and be sure. And so in the end, that's what our position is, is that we're really asking for pretty modest relief here. We're only asking that Mr. Russell be afforded the opportunity to make his case and make his arguments to a district court that now, in light of Jones, understands that it has the authority to grant a discretionary reduction. And because Mr. Russell did not receive that opportunity the first time, we respectfully request that this court vacate the orders below and remand for further proceedings. If the court has no further questions, then we thank the court for its time. All right. Thank you, Mr. Adler, and thank you very much, Ms. Hirsch, for the argument. They were very helpful.